## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| JOE'S KANSAS CITY BAR-B-QUE, INC., <br><br> Plaintiff, <br><br> vs. <br><br> CERTAIN UNDERWRITERS AT LLOYD'S LONDON, subscribing to Policy No. TNR 18 8157, <br><br> Serve: Commissioner of Insurance <br>       Kansas Insurance Department <br>       1300 SW Arrowhead Road <br>       Topeka, Kansas 66604-4073 <br><br> Defendants. | Civil Action No. <br><br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Joe's Kansas City Bar-B-Que, Inc. ("Plaintiff" or "Joe's"), by and through its undersigned counsel, and for its Complaint, alleges against Certain Underwriters at Lloyd's, London ("Defendant" or "Lloyd's") as follows:

### NATURE OF THE ACTION

1. This insurance coverage dispute concerns the amount of insurance proceeds to which Joe's is entitled for losses caused by the COVID-19 pandemic under a "Trade Name Restoration, Loss of Business Income and Incident Response Insurance for Food Borne Illness" Policy issued by Lloyd's to Joe's, no. TNR 18 8157, effective June 1, 2019 through June 1, 2020 (the "Policy"). A copy of the Policy is attached hereto as **Exhibit 1**.

### PARTIES

2. Joe's Kansas City Bar-B-Que, Inc. is a corporation duly organized under the laws of Kansas with its principal place of business in Kansas, and at all relevant times conducted business in the State of Kansas.

3. Upon information and belief, Lloyd's is an insurance association of underwriters and maintains its principal place of business in London, England. At all times relevant to this action, Lloyd's transacted business and issued insurance in the State of Kansas.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5. This Court has personal jurisdiction over Lloyd's because Lloyd's was at all relevant times licensed to sell insurance in the State of Kansas, engaged in the business of writing insurance policies in the State of Kansas, regularly transacted business in the State of Kansas, and/or this action arises out of Lloyd's acts within the State of Kansas.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this judicial district and because a substantial part of the property that is the subject of this action is situated in this judicial district.

## FACTUAL BACKGROUND

**A.     THE POLICY**

7. As set forth in the Pandemic Event Endorsement (Ex. 1, p. 20), the Policy indemnifies Joe's for certain losses and expenses caused by **Pandemic Events**[1] up to $250,000 per **Covered Location** and $500,000 per **Period of Insurance,** subject to a $10,000 deductible per **Incident.**

---

[1] Terms in bold are specifically defined in the Policy.

8. As amended by the Pandemic Event Endorsement, the Policy provides coverage for **Pandemic Events**, in part, as follows:

1. **INSURING AGREEMENT**

   In consideration of the foregoing and payment of the Premium, Underwriters agree, subject to all the terms, conditions, limitations and exclusions set forth herein, to indemnify the **Insured** for the following, provided that such result directly and solely from an **Incident** that occurs within the **Period of Insurance** and is reported to Underwriters in accordance with Section 7.1 of this Policy, which in no event shall be later than ninety (90) days following the termination of the **Period of Insurance**:

   1.1 **Actual Net Loss** in excess of any **Deductible** sustained by the **Insured** at each **Affected Covered Location** during a **Period of Restoration**;

   \*\*\*

3. **LOSS ADJUSTMENT**

   ….

   3.3 In the event the **Insured** receives or enters into an agreement to receive any make up of loss, salvage, settlement, recoveries, payments, credits, or other financial benefits in compensation for any loss covered under this Policy from any person or entity other than Underwriters, the amount of **Actual Net Loss, Incident Response Expenses**, or **Extortion Payment** will be reduced by the amount of any such make up of loss, salvage, settlement, recoveries, payments, credits, or other financial benefits, regardless of whether any such amounts have been paid to or received by the **Insured** at the time of payment by Underwriters. Nothing in this Section 3.3 shall serve to void Underwriters' rights or the **Insured's** obligations under the subrogation provision in Section 8.7.

   3.4 **Actual Net Loss** for each **Affected Covered Location** shall be calculated in accordance with the following formula:

   $$[(A - B) \times C] + D$$

   where  $A$ = The **Insured's Normal Gross Revenue**
   $B$ = The **Insured's Affected Gross Revenue**
   $C$ = The **Insured's Normal Operating Margin**
   $D$ = The **Insured's Recoverable Necessary Costs of Sales**

   \*\*\*

4. **DEFINITIONS**

3

....

**4.2**   **"Actual Net Loss"** means the loss for each **Affected Covered Location** calculated in accordance with Section 3.4.

**4.3**   "**Affected Covered Location**" For **Pandemic Event(s)**, **Affected Covered Location** shall mean only the specific **Covered Location** where the **Pandemic Event** occurred and whose **Normal Gross Revenues** are reduced by at least ten percent (10%) for a period in excess of seven (7) consecutive days, due directly and solely to the occurrence of a **Pandemic Event**.

**4.4**   **"Affected Gross Revenues"** means the **Gross Revenues** actually earned by the **Insured** at an **Affected Covered Location** during the **Period of Restoration.**

….

**4.12**   "**Gross Revenues**" means the gross revenues derived from business operations carried on by the Insured at a **Covered Location**, as more fully itemized in the Application and as determined by U.S. Generally Accepted Accounting Principles.

**4.13**   **"Incident"** means a **Pandemic Event.** All **Pandemic Events** arising out of one or multiple visits by an **Infected Person** or the simultaneous presence of multiple **Infected Person(s)** within a **Covered Location,** shall be considered one **Incident**; and, the **Incident** shall be deemed to have occurred at the time of the earliest occurrence of the **Pandemic Event.**

….

**4.21**   **"Normal Gross Revenues"** means **Gross Revenues** the **Insured** can satisfactorily prove would have been generated from its normal and customary business operations at an **Affected Covered Location** in the absence of an **Incident. Normal Gross Revenues** shall be determined by Underwriters based on an analysis of the **Gross Revenues** derived from the **Insured's** normal and customary business operations at the **Covered Location** during the corresponding period in the year prior to the **Incident** (the prior year **Gross Revenues** being adjusted, however, to allow for all material trends, variations or changes in market conditions of any nature whatsoever which would have affected **Gross Revenues** of the **Insured** even in the absence of an **Incident).**

**4.22**   **"Normal Operating Margin"** means the percentage of **Insured's Normal Gross Revenues** remaining after subtracting variable costs of sales from the corresponding period in the year prior to the **Incident,** which include without limitation, costs of food, beverages, paper, labor (including payroll taxes), credit card fees, and other costs which fluctuate with sales, but before taxes and other indirect fixed or semi-fixed costs from the corresponding period in the year prior to

the **Incident,** which include without limitation rent, utilities, management or executive compensation, bonuses and interest.

….

**4.24** **"Period of Restoration"** for **Pandemic Event** means a period of twelve (12) months. The period commences on the date of the **Incident** and ends on the earlier of the following dates:

(a) the first date that the **Gross Revenues** derived from the **Insured's** normal and customary business operations at the **Affected Covered Location** are within ten percent (10%) of the **Normal Gross Revenues** for the **Affected Covered Location** and; thereafter, remain within ten percent (10%) of the **Normal Gross Revenues** for the **Affected Covered Location** for the next six (6) consecutive days; or

(b) twelve (12) months from the date of the **Incident**;

The **Period of Restoration** shall not be affected by the expiration of the **Period of Insurance.**

**4.28** **"Recoverable Necessary Costs of Sales"** means those reasonable and necessary variable costs, incurred by the **Insured** to generate **Affected Gross Revenues,** that (a) are in excess of the Insured's normal variable costs of production, derived from the calculation of the **Insured's Normal Operating Margin,** and (b) could not have been reasonably reduced or eliminated because, as agreed between **Underwriters** and the **Insured,** the expenses were necessary to maintain the Insured's normal and customarily means of operating each **Affected Covered Location** and reducing or eliminating the costs would cause the **Insured** undue hardship**. Recoverable Necessary Costs of Sales** shall never include any **Incident Response Expenses.**

….

**4.59** "**Pandemic Event**" means either:

(a) the actual presence of an **Infected Person** within a **Covered Location**; or,
(b) the announcement by a **Public Health Authority** that a specific **Covered Location** is being closed as a result of an **Epidemic** declared by the CDC or WHO.

**B.     THE INSURANCE CLAIM**

9.     Due to the COVID-19 pandemic, Joe's sustained losses at the barbeque restaurants at the following locations, which constitute **Covered Locations** under the Policy: (1) 2850 West

5

47th Street, Kansas City, Kansas 66103; (2) 11723 Roe Avenue, Leawood, Kansas 66211; and (3) 11950 South Strang Line Road, Olathe, Kansas 66062 (collectively, referred to as the "Covered Locations").

10. On or about May 19, 2020, Joe's submitted a claim under the Policy for COVID-19 losses at each of the Covered Locations (the "Claim").

11. Ultimately, Lloyd's accepted coverage for Joe's claim under the Policy and has made certain payments to Joe's totaling $192,830.64.

12. However, the Parties disagree as to the amount of proceeds due under the Policy for the Claim.

13. Specifically, while the Parties generally agree that Joe's Actual Net Loss (as defined in the Policy) at each of the Covered Locations exceeds the $250,000 per **Covered Location** limit, Lloyd's asserts that Joe's losses are offset by forgiven Paycheck Protection Program ("PPP") loans as follows:

> We have now had the opportunity to finalize adjustment of the Loss Submission materials that Joe's Kansas City Bar-B-Que, Inc. has provided for the period through March 17, 2021, which concludes the Period of Restoration. We appreciate Joe's Kansas City Bar-B-Que, Inc. cooperation in providing those materials. The actual net loss presented to date totals $2,144,509.55. Please note that Section 3.3 of the TNR Form provides that where "the Insured receives or enters into an agreement to receive any make up of loss, salvage, settlement, recoveries, payments, credits, or other financial benefits in compensation for any loss covered under this Policy from any person or entity other than Underwriters, the amount of Actual Net Loss . . . will be reduced by the amount of any such make up of loss, salvage, settlement, recoveries, payments, credits, or other financial benefits, regardless of whether any such amounts have been paid to or received by the Insured at the time of payment by Underwriters."
>
> As set forth in your Loss Submission materials that have been provided to date, Joe's Kansas City Bar-B-Que, Inc. received Paycheck Protection Program ("PPP") loans in the total amount of $3,556,492.75 ($1,512,701.50 at the Kansas City location; $1,507,091.25 at the Olathe location; $536,700 at the Leawood location). Joe's actual net loss at the Kansas City and Olathe locations, $637,537.04 and $767,441.87 respectively, does not exceed the PPP loans that Joe's obtained for those locations. Joe's actual net loss at the Leawood location is $739,530.64 which exceeds the PPP loan that Joe's obtained for that

location by $202,830.64. Underwriters previously made interim payments of $186,515.43 in addition to Joe's $10,000 deductible, so Underwriters will now make a final payment of $6,315.21.

*See* May 18, 2021 Email from Reannon Graham, agent for Lloyd's, to Noah Nash, attorney for Joe's, attached hereto as **Exhibit 2.**

14. Joe's disputes that its losses are offset by PPP loans that are forgiven and, accordingly, asserts it is entitled to full Policy limits for the Claim.

15. The Parties also dispute whether certain costs incurred by Joe's—including the purchase of plexiglass, ozone generators, a fence for a new patio, Tuff Sheds for exterior employees, and contactless payment readers for the Covered Locations (collectively, the "Safety Costs")—are covered under the Policy. Joe's asserts these costs constitute **Recoverable Necessary Costs of Sales** under the Policy, whereas Lloyd's denies these costs are recoverable under the Policy.

16. Joe's now seeks to recover under the Policy, and more specifically, the Pandemic Endorsement, all coverage to which it is entitled.

## FIRST CAUSE OF ACTION
## FOR BREACH OF CONTRACT

17. Joe's realleges and incorporates by reference all previous allegations as though set forth fully herein.

18. Lloyd's has materially breached its duties and obligations under the Policy by, among other things, unreasonably refusing and/or failing to pay, in full, all losses and damages owed under the Policy for the Claim.

19. As a direct and proximate result of this breach, Joe's has suffered and continues to suffer damages in an amount to conform to proof at trial, but in excess of that required for this Court's jurisdiction.

7

## SECOND CAUSE OF ACTION
## FOR DECLARATORY JUDGMENT

20. Joe's realleges and incorporates by reference all previous allegations as though set forth fully herein.

21. A justiciable controversy exists as to the amount of proceeds to which Joe's is entitled under the Policy for the Claim.

22. A declaration is necessary and appropriate at this time to resolve the Parties' dispute about the amount of proceeds to which Joe's in entitled under the Policy for the Claim.

23. Joe's asks the Court to declare that: (1) Lloyd's cannot offset sums owed under the Policy with Joe's PPP loan proceeds, and (2) Lloyd's must indemnify Joe's for its Safety Costs.

## DESIGNATION OF TRIAL LOCATION

Pursuant to Local Rule 40.2, Joe's requests that the Court designate Kansas City, Kansas as the place of trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joe's Kansas City Bar-B-Que, Inc. respectfully prays for a judgment against Defendant Certain Underwriters at Lloyd's, London for the following:

(a) Declaratory relief;

(b) Compensatory and general damages;

(c) Consequential, special, and incidental damages;

(d) Applicable interest, including prejudgment and post-judgment interest at the maximum legal rate;

(e) Reasonable attorneys' fees and costs; and

(f) Such other and further relief as the Court may deem just and proper.

Dated: August 9, 2021                    LATHROP GPM LLP


By: /s/ *Alexander T. Brown*
    Alexander T. Brown, Bar No. 78891
    Noah H. Nash, *Pro Hac Vice* pending
    2345 Grand Boulevard, Suite 2200
    Kansas City, MO 64108
    Telephone: 816.460.5629
    Telecopier: 816.292.2001
    alexander.brown@lathropgpm.com
    noah.nash@lathropgpm.com

    *Attorneys for Plaintiff*
    *Joe's Kansas City Bar-B-Que, Inc.*